# ESI SUPPLEMENT TO CASE MANAGEMENT PLAN

To be prepared and submitted as directed pursuant to paragraph III.K. of the Master Case Management Plan or by Court Order.

1. <u>Discovery Scope</u>.  Following a detailed discussion between counsel of a discovery plan for this matter, each party should outline below the categories and types of information that party intends to seek in discovery in this matter.  This outline should include, in addition to identification of the various topics on which discovery will be sought and identification of the nature and type of documents to be produced, a list by each party of the potentially relevant custodians of such information and the date ranges relevant to discovery in this matter.

    Plaintiff(s):

    (1) Defendants' Provider Network;

    (2) Agreements between Defendants, HSPs, subcontractors, and/or Plaintiffs relevant to the Provider Network and Plaintiffs' work;

    (3) Agreements between Defendants, HSPs, subcontractors and other entities relating to Defendants' acquisition of entities that participate(d) in the Provider Network;

    (4) Defendants' policies and practices relating to the Provider Network, communications between the parties, the scope, means and methods of Plaintiffs' work, the method and administration of Plaintiffs' compensation, and the method and administration of Defendants' retention of documents related to Plaintiffs' work, including electronic mail;

    (5) Plaintiffs' alleged claims and damages;

    (6) Defendants' defenses;

    (7) Depositions of each Defendant's fact and corporate representative witnesses, including all witnesses identified in each Defendant's initial disclosures;

    (7) Depositions of each of the  named Plaintiffs;

    (8) Depositions and fact discovery of the third-party subcontractors.

    Defendant(s):

Defendants contend that discovery, including ESI, should not begin until after the Court decides Defendants' pending Motions to Dismiss the First Amended Complaint and Motions to Sever, which Defendants anticipate will impact the scope of discovery in this case.

    Defendant DIRECTV:

- Depositions of each individual Plaintiff, and depositions of Plaintiffs' managers and/or supervisors at the entities with whom Plaintiffs had a direct relationship.

- Document discovery from Plaintiffs, including e-mails from Plaintiff to personnel at the entities with whom they had a direct relationship and emails to Plaintiff from the entities with whom they had a direct relationship; all documents, records, policies, and procedures received by Plaintiffs from DIRECTV or the entity with whom they had a direct relationship; copy of any independent contractor agreement Plaintiffs signed with the entities with whom they had a direct relationship; copy of any pay stubs or checks to Plaintiffs from the entities with whom they had a direct relationship; any and all federal, state and local tax returns, including schedules and W-2s, filed by Plaintiffs during the years for which they are seeking recovery; diaries, calendars, notes, schedules, time trackers, time sheets, or chronologies (written or electronic) created or maintained by Plaintiffs showing hours worked as technicians; documents demonstrating how Plaintiffs learned to record time worked as technicians and/or directing Plaintiffs how to record time worked as technicians; documents evidencing any time spent not working during Plaintiffs' alleged employment periods as technicians, including but not limited to ATM and/or bank card records, credit card receipts and records, ticket stubs, receipts, etc.; maintenance records of the vehicle(s) Plaintiffs drove to and from job sites as technicians; documents related to any purported chargeback Plaintiffs received as technicians; documents regarding any complaints made by Plaintiffs to DIRECTV about alleged wage-and-hour violations; documents relating to any response to any such complaint; documents evidencing Plaintiffs' damages and calculation of damages.

- Upon identification of Plaintiffs' technician identification numbers, Plaintiffs' work order histories for Plaintiffs, if any;

- HSP Agreements between DIRECTV and DirectSat.

- Upon identification of the entities with whom Plaintiffs had a direct relationship, service provider agreements between DIRECTV and those entities, if any.

- Upon identification of the entities with whom Plaintiffs had a direct relationship, records reflecting payments made from DIRECTV to those entities during the relevant time period, if any.

- Discovery questionnaires and documents produced by Plaintiffs in prior litigation against DIRECTV, if any.

- Upon identification of the entities with whom Plaintiffs had a direct relationship, documents from those entities regarding Plaintiffs who worked for those entities.

- DIRECTV's defenses.

Defendant DirectSat USA, LLC

- Depositions of each individual Plaintiff, and depositions of Plaintiffs' managers and/or supervisors at the entities with whom Plaintiffs had a direct relationship.

- Document discovery from Plaintiffs, including e-mails from Plaintiff to personnel at the entities with whom they had a direct relationship and emails to Plaintiff from the entities with whom they had a direct relationship; all documents, records, policies, and procedures received by Plaintiffs from DirectSat or the entity with whom they had a direct relationship; copy of any independent contractor agreement Plaintiffs signed with the entities with whom they had a direct relationship; copy of any pay stubs or checks to Plaintiffs from the entities with whom they had a direct relationship; any and all federal, state and local tax returns, including schedules and W-2s, filed by Plaintiffs during the years for which they are seeking recovery; diaries, calendars, notes, schedules, time trackers, time sheets, or chronologies (written or electronic) created or maintained by Plaintiffs showing hours worked as technicians; documents demonstrating how Plaintiffs learned to record time worked as technicians and/or directing Plaintiffs how to record time worked as technicians; documents evidencing any time spent not working during Plaintiffs' alleged employment periods as technicians, including but not limited to ATM and/or bank card records, credit card receipts and records, ticket stubs, receipts, etc.; maintenance records of the vehicle(s) Plaintiffs drove to and from job sites as technicians; documents related to any purported chargeback Plaintiffs received as technicians; documents regarding any complaints made by Plaintiffs to DirectSat about alleged wage-and-hour violations; documents relating to any response to any such complaint; documents evidencing Plaintiffs' damages and calculation of damages.

- HSP Agreements between DIRECTV and DirectSat

- Upon identification of the entities with whom Plaintiffs had a direct relationship, independent contractor agreements between DirectSat and that (those) entity(ies) during the relevant time period, if any;

- Upon identification of the entities with whom Plaintiffs had a direct relationship, records reflecting payments made from DirectSat to that (those) entity(ies) during the relevant time period, if any;

- Upon identification of the entities with whom Plaintiffs had a direct relationship, contractor file(s) regarding that (those) entity(ies) during the relevant time period, if any;

- For Plaintiffs who spent time during the relevant time period as W-2 employees of DirectSat, employee files, time sheets and pay stubs for those individuals;

- For Plaintiffs who spent time during the relevant time period as W-2 employees of DirectSat, DirectSat's practices, policies, and procedures applicable to W-2 employees;

- Upon identification of the entities with whom Plaintiffs had a direct relationship, documents from those entities regarding Plaintiffs who worked for those entities.

- DirectSat's defenses.

Defendant Multiband:

- All five (5) Plaintiffs who currently bring claims against Defendant Multiband do so on the basis of employment by another entity, not on the basis of employment by Multiband. Specifically, these five (5) Plaintiffs who bring claims against Multiband allege that they were "treated as independent contractors" by a number of entities, including Multiband, but fail to specify which entity or entities treated them as such (FAC ¶¶ 111, 123, 129, 147, 159). As set forth in its Motion to Dismiss Plaintiffs' Amended Complaint, Plaintiffs have failed to establish they were employed or jointly employed by Multiband, and accordingly have no FLSA claim against Multiband. Because, as Plaintiffs' admit, they were not directly employed by Multiband, Multiband will not have documentation regarding these Plaintiffs (i.e., personnel files, payroll records, etc.). It will have documents related to Multiband's agreement(s) and statements of work with contractors for whom these five (5) Plaintiffs allege they performed work, and records reflecting payments made from Multiband to those entities during the relevant time period, if any, as well as Home Service Provider Agreements between DIRECTV and Multiband. Other than these topics, Multiband does not believe it would have ESI relevant to these Plaintiffs.

- Multiband's discovery topics are as follows:
    - Multiband's agreement(s) and statements of work with contractors for whom the five (5) Plaintiffs who bring claims against Multiband allege they performed work, and records reflecting payments made from Multiband to those entities during the relevant time period, if any.
    - Home Service Provider Agreements between DIRECTV and Multiband.
    - Depositions of each individual Plaintiff, and depositions of Plaintiffs' managers and/or supervisors at the third-party entities with whom Plaintiffs had a direct relationship.
    - Document discovery from Plaintiffs, including e-mails from Plaintiff to personnel at the entities with whom they had a direct relationship and emails to Plaintiff from the entities with whom they had a direct relationship; all documents, records, policies, and procedures received by Plaintiffs; copy of any independent contractor agreement Plaintiffs signed with the entities with whom they had a direct relationship; copy of any pay stubs or checks to Plaintiffs from the entities with whom they had a direct relationship; any and all federal, state and local tax returns, including schedules and W-2s, filed by Plaintiffs during the years for which they are

4

> seeking recovery; diaries, calendars, notes, schedules, time trackers, time sheets, or chronologies (written or electronic) created or maintained by Plaintiffs showing hours worked as technicians; documents demonstrating how Plaintiffs learned to record time worked as technicians and/or directing Plaintiffs how to record time worked as technicians; documents evidencing any time spent not working during Plaintiffs' alleged employment periods as technicians; maintenance records of the vehicle(s) Plaintiffs drove to and from job sites as technicians; documents related to any purported chargeback Plaintiffs received as technicians; documents regarding any complaints made by Plaintiffs to Multiband about alleged wage-and-hour violations; documents relating to any response to any such complaint; documents evidencing Plaintiffs' damages and calculation of damages.
> - Upon identification of the third-party entities with whom Plaintiffs had a direct relationship, documents from those entities regarding Plaintiffs who worked for those entities.
> - Multiband's defenses.

2. <u>ESI Sources and Volumes</u>.  With regard to the discovery outlined in paragraph 1, each party should discuss the types of ESI (*e.g.*, Outlook e-mail, Word documents, Excel spreadsheets, CAD drawings, etc.) implicated by the opposing party's requests (meaning that Defendant should address the categories and types of information identified by the Plaintiff, etc.), any proprietary software involved in the production of such ESI, the location of such ESI (*e.g.,* 14 servers located in 3 states, 57 individual PC hard drives that are not connected to a central server, etc.), and the estimated volume of ESI implicated by such requests (*e.g.*, 20 GB of Outlook .pst files, 500 MB of Excel spreadsheets, etc.).

Counsel for the parties have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information.  The parties have not reached agreement on all of these topics.  Counsel for the parties will continue to confer on the subject of ESI, for example, regarding search terms to be applied, and will work in good faith to resolve any such issues before bringing them to the Court. Because of the very general nature of Plaintiffs' current requests for ESI, Defendants are unable to provide the specific ESI volumes, server locations, etc..  Defendants believe that Plaintiffs requests implicate the following types of ESI: e-mail, Word documents, Excel spreadsheets, PDF documents, payroll systems/records, HRIS systems/records.

As set forth above, other than the limited topics noted, Multiband does not believe it would have ESI relevant to the five (5) Plaintiffs who allege claims against it.

Plaintiffs anticipate requesting production of relevant documents (including email correspondence and other ESI pertaining to the specific time periods in which Plaintiffs

performed work) reasonably calculated to lead to the discovery of admissible evidence, which Defendants may have stored in archives or archival formats. Plaintiffs object to the characterization of information contained therein as back-up or legacy data or any other format made undiscoverable for preservation purposes, which, Defendants may contend, is not available in the ordinary course of business.

Defendants contend that production should be limited to data reasonably available to the parties in the ordinary course of business. Defendants object to Plaintiffs' contention that the production of back-up or historic legacy data is reasonably discoverable and absent a showing of good cause such data should not be required to be produced. Plaintiffs have not so much as attempted to show good cause at this juncture.

At this time, and until Defendants respond to Plaintiffs' anticipated requests for production of documents, it is not known whether the requests seek data beyond what is reasonably available to the parties in the ordinary course of business, and the scope, cost, and time required for disclosure and production of that data. Upon request for ESI, the parties will meet and confer to address such requests and any implicated cost-shifting requirement.

The parties agree that ESI, to the extent requests for such information is reasonable in scope, should be produced in an accessible standard format and on a standard media (e.g., hard drive, floppy disk, CD-ROM, ZIP disk, or otherwise).

Plaintiffs' counsel has requested that: (1) documents be produced in TIFF format with Summation load files and (2) that other data be produced in machine-readable format. This does not necessarily mean "native" format in the most extreme sense. Rather, in a format that can be analyzed and used by standard spreadsheet and database programs (e.g., comma separate value files (".csv") or Microsoft Excel (".xls" or ".xlsx").

Defendants contend that no party will be obligated to change or convert ESI to a new or different electronic format to make the information compatible with the requesting party's preferences, computer system, or any other computer system. Plaintiffs contend that the issue of ESI conversion should be resolved on a case-by-case basis with the parties conferring in good faith to resolve the question without the Court's involvement. If any ESI is not readable, or requires a proprietary system to read it, the producing party may elect to produce such information in a commonly available electronic format in a readable and searchable form (such as Excel, Word, or searchable .pdf). Upon a request for ESI, the parties will meet and confer to address such requests and any implicated cost-shifting requirement.

Defendants are taking reasonable measures to maintain such records. Defendants, however, are unable to determine the universe of potentially relevant documents and information at this juncture because of the insufficient nature of the allegations contained in Plaintiffs' First Amended Complaint.

3. <u>Accessibility</u>. Identify any potential sources of ESI in this matter that are "not reasonably accessible" as defined by Fed. R. Civ. P. 26(b)(2)(B).

   Plaintiff(s):

   Plaintiffs are unaware of any potential sources of ESI in this matter that are not reasonably accessible as defined by Fed. R. Civ. P. 26(b)(2)(B).

   Defendant(s):

   Upon receipt of Plaintiffs' requests for production, Defendants will be able to determine if there are any sources of ESI in this matter that are not reasonably accessible as defined by Fed. R. Civ. P. 26(b)(2)(B). Defendants anticipate that it is possible that some of its back-up or historic legacy data in its payroll and other systems may not be reasonably accessible. Defendants contend that production should be limited to data reasonably available to the parties in the ordinary course of business. Defendants object to Plaintiffs' contention that the production of back-up or historic legacy data is reasonably discoverable and absent a showing of good cause such data should not be required to be produced. Plaintiffs have not so much as attempted to show good cause at this juncture.

4. <u>ESI Management Software</u>. Describe the software each party intends to use to manage any ESI produced in this matter and identify the Information Technology personnel primarily responsible for assisting counsel with the production and management of ESI in this matter.

   Plaintiff(s):

   Summation—Enterprise; Breeze.   Maggie Smith.

   Defendant(s):

   As set forth above, other than the topics noted, Multiband does not believe it would have any ESI relevant to the five (5) Plaintiffs who allege claims against it based upon "independent contractor" work for a different entity. If it is determined Multiband is in the possession of ESI relevant to the five (5) Plaintiffs who allege claims against it, Defendant Multiband anticipates retaining a vendor (likely RVM) at Plaintiffs' shared cost, to assist with and manage any ESI produced in this matter. Defendant Multiband anticipates using Eclipse and Relativity software at Plaintiffs' shared cost to manage any ESI produced in this matter. The Information Technology personnel primarily responsible for assisting counsel with the production and management of ESI in this matter at Duane Morris is Sean Robinson, in conjunction with Multiband's ESI vendor (likely RVM).

   Counsel for DIRECTV and DirectSat utilize Relativity to manage the production of ESI, and any production will be overseen by outside counsel for these Defendants. Counsel for

DIRECTV and DirectSat maintains contact with IT personnel who will assist counsel with the production and management of any ESI in this matter.

5. <u>Metadata</u>.  Identify the potential sources of metadata in this matter and each party's anticipated use of metadata in this matter.

   Plaintiff(s):

   Plaintiffs anticipate using any metadata produced by Defendants in to search for documents and information relevant to the issues raised in this matter.

   Defendant(s):

It is not clear to Defendants that Plaintiffs will seek metadata in this matter.  Defendants are not yet able to ascertain whether the documents/records requested by Plaintiffs may contain metadata, and whether it will object to the production of that metadata on the grounds of relevance (or any other grounds).

6. <u>ESI Format</u>.  Set forth the format in which each party will produce ESI in this matter.

   Plaintiff(s):

   TIFF with Summation load files.

   Defendant(s):

As set forth above, other than the limited topics noted, Multiband does not believe it would have any ESI relevant to the five (5) Plaintiffs who allege claims against it based upon "independent contractor" work for a different entity.  If it is determined that Multiband is in the possession of relevant ESI other than the topics noted (which would be produced in the form of PDF), Multiband will produce that ESI in an accessible standard format and on a standard media (e.g., hard drive, floppy disk, CD-ROM, ZIP disk, or otherwise).  Because Multiband does not yet know the size of any potential ESI production, it currently objects to Plaintiffs' request to receive ESI in TIFF with Summation load files.  However, Multiband will discuss with its vendor the costs and feasibility of Plaintiffs' request for ESI to be produced in this manner at Plaintiffs' shared cost.

For Defendants DIRECTV and DirectSat, the production format for ESI will be governed by the size of the ESI being produced.  A small production may simply be in the form of PDFs downloaded through an FTP side.  For larger productions containing e-mails, as noted above, Counsel for DIRECTV and DirectSat utilize Relativity software and can produce the documents with Summation load files.

7. <u>Discovery Sequencing</u>.  Have the parties agreed on a plan for the sequencing of discovery in this matter?    Yes    No

    No<u>.</u>

    As set forth above and in the Case Management Plan, Defendants contend that discovery, including ESI, should not begin until after the Court decides Defendants' pending Motions to Dismiss the First Amended Complaint and Motions to Sever.  Defendants will propose sequencing of discovery after resolution of their threshold motions (which Defendants anticipate will impact the scope of discovery and ESI).

    If yes, please describe such agreements:

    If no, please describe the efforts undertaken to reach agreement and identify the issues that remain outstanding:

    Please see description set forth above.

8. <u>Search Protocol</u>.  Have the parties agreed on any protocol for the identification and review of relevant ESI (*e.g.*, search terms, predictive coding, etc.)?    Yes    No

    No.

    If yes, please describe such agreements, including, if applicable, a list of agreed search terms to be used:

    If no, please describe the efforts undertaken to reach agreement and identify the issues that remain outstanding:

    Please see description set forth above.  The parties are continuing to meet and confer on ESI search protocol.  As set forth in the Case Management Plan, Defendants contend that discovery, including ESI, should not begin until after the Court decides Defendants' pending Motions to Dismiss the First Amended Complaint and Motions to Sever.  Defendants anticipate these motions will impact the scope of discovery and ESI.

    The parties do intend to use and reach an agreement on search terms to use to search for relevant ESI, and may also consider the use of predictive coding, depending should the volume of ESI.

    As set forth above, Multiband does not believe it would have any ESI relevant to the five (5) Plaintiffs who allege claims against it based upon "independent contractor" work for a different entity.  If it is determined Multiband has relevant

9

       ESI in its possession regarding these five (5) Plaintiffs, Multiband will work towards an agreement with Plaintiffs' counsel concerning ESI search protocol (to be applied at Plaintiffs' shared costs).

9. <u>Preservation</u>.  Describe what efforts each party has undertaken to ensure the preservation of ESI potentially relevant to this matter and identify any unresolved issues pertaining to the preservation of ESI in this matter?

    Plaintiff(s):

    Plaintiffs have scanned paper documents into an electronic format and are stored electronically at Plaintiffs' counsel's office server.

    Defendant(s):  Defendants have issued preservation letters.

    Unresolved issues:

    None at this time.

10. <u>Cost of Production</u>.  Each party should analyze the data provided in paragraph 2 and provide an estimate of the costs associated with production of ESI in this matter:

    Plaintiff(s):

    Plaintiffs cannot anticipate costs of production until Defendants respond to Plaintiffs' Request for Production, setting forth Defendants' position regarding production of the ESI requested, including electronic mail.

    Defendant(s):

    Defendants do not yet know the estimate of the costs (which are to be shared by Plaintiffs) associated with production of the ESI set forth by Plaintiffs in paragraph 2. Defendants hope that through conference with Plaintiffs, the scope of ESI requested will be narrowed to a more realistic set of requests, before it even engages a vendor with respect to scoping and pricing the costs (to be shared by Plaintiffs) of managing the ESI requests set forth by Plaintiffs in paragraph 2. The parties will continue to meet and confer on ESI.

11. <u>Cost Allocation/Savings</u>.  Describe below the parties' discussions regarding cost-shifting or cost-savings measures in this matter and set forth in detail any agreements reached between the parties in that regard:

None at this time, however, Defendants contend that Plaintiffs should be required to share the costs of ESI retrieval. Please see general description of the parties' discussions set forth above.

12. <u>Discovery Proportionality</u>.  Do the parties agree that the discovery of ESI in this matter satisfies the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C)?    Yes    No

    The parties cannot determine at this time whether the proportionality standard is satisfied.

    If no, identify the nature of the dispute:

13. <u>Claw Back Agreement</u>.  Have the parties agreed on the following unintentional production "claw back" provision?    Yes    No

Yes.

> In the event that a document protected by the attorney-client privilege, the attorney work product doctrine or other applicable privilege or protection is unintentionally produced by any party to this proceeding, the producing party may request that the document be returned.  In the event that such a request is made, all parties to the litigation and their counsel shall promptly return all copies of the document in their possession, custody, or control to the producing party and shall not retain or make any copies of the document or any documents derived from such document.  The producing party shall promptly identify the returned document on a privilege log.  The unintentional disclosure of a privileged or otherwise protected document shall not constitute a waiver of the privilege or protection with respect to that document or any other documents involving the same or similar subject matter.

   If no, set forth the alternative provision being proposed?

14. <u>Other</u>. Identify all outstanding issues or disputes concerning ESI not otherwise addressed herein.

    Plaintiff(s):

    None at this time.

    Defendant(s):

11