UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN  DELGADO, | ) | |
| *et al.* | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-01722-SEB-DML |
| | ) | |
| DIRECTV, INC., | ) | |
| *et al.* | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

This cause is before the Court on motions to dismiss filed by Defendants

DIRECTV, Inc. / DIRECTV, LLC ("DirecTV") [1] [Docket No. 53], DirectSat USA, LLC

("DirectSat) [Docket No. 54], and Multiband Corp. ("Multiband") [Docket No. 57] as

well as motions to sever filed by Defendants DirectSat [Docket No. 48] and Multiband

[Docket No. 51]. For the reasons detailed below, we hereby **DENY** Defendants' motions

to sever and **GRANT in part** and **DENY in part** Defendants' motions to dismiss.

**Factual Background**

Plaintiffs are twenty-one current and former satellite installation technicians who

installed DirecTV satellite television equipment throughout the State of Indiana. On

October 20, 2014, Plaintiffs jointly filed this action against Defendants DirecTV,

---

[1] Effective January 1, 2012, DIRECTV, Inc., merged into DIRECTV, LLC, and out of existence.

DirectSat, and Multiband Corp. for violations of the Fair Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* alleging that they were denied appropriate compensation and protections as "employees" under the Act.

   Plaintiffs contend that Defendant DirecTV—the country's largest supplier of satellite entertainment services—operates a "fissured employment scheme" designed to allow the company to shed its role as a direct employer of its technicians and dissociate itself from the workers responsible for its products, while simultaneously maintaining tight control over the method, manner, quantity, and quality of production. Dkt. 41 at 2. According to Plaintiffs, DirecTV is able to accomplish its employment scheme by contracting out most of its work through several levels of intermediaries which make up its "Provider Network." Under the alleged scheme, DirecTV enters into identical "Provider Agreements" with independent companies known as "Home Service Providers" ("HSPs"), who in turn manage satellite technicians directly or engage with yet another level of intermediaries to do so. Dkt. 41 at ¶ 37. Defendants DirectSat and Multiband are two of the HSP intermediaries who manage satellite technicians in Indiana. Plaintiffs contend that throughout each phase of contracting in DirecTV's Provider Network, its policies, procedures, practices, performance standards, and payment methods are drafted into the agreements and ultimately imposed on the technicians. *Id.* at 43. Plaintiffs further maintain that, as a result of its uniform implementation of practices and policies, DirecTV has created "an economic reality" such that DirecTV, and, where

2

applicable, its HSP intermediaries, are Plaintiffs' employer(s), subject to liability under the FLSA. *Id.* ¶ 76.

Among the policies and procedures Plaintiffs allege are implemented by DirecTV through its "Provider Network" is DirecTV's "Piece-Rate" or pay-per-task system of compensation. Plaintiffs contend that they never entered into an agreement with Defendants concerning the pay-per-task system of pay and that, under the system, they were paid only for certain enumerated "productive tasks," while unlawfully being denied compensation for other necessary work they performed, including: assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DirecTV to report or activate service, working on incomplete installations, and working on certain previously completed installations. *Id.* ¶¶ 77–84. Plaintiffs also claim that DirecTV, through its Provider Network, implemented a "chargeback" payment policy such that Plaintiffs' wages were not paid "free and clear." Plaintiffs contend that under that policy Defendants would deduct amounts from Plaintiffs' pay up to 90 days after a customer's service was activated, if "there were issues with an installation" such as "faulty equipment [or] improper installations" or if there were "questions from the customer" or if the technician received a customer satisfaction rating "not greater than 95%." Dkt. 41 ¶ 87. Plaintiffs also claim that as independent contractors they were required to purchase supplies necessary to perform installations, such as screw, poles,

concrete, and cables as well as the gas and maintenance costs associated with their work vehicles. Dkt. 88.

As a result, Plaintiffs claim they were denied appropriate compensation for work done on "tasks not assigned a piece rate" and that they worked (in varying specified amounts) more than 40 hours per week for which they were unlawfully deprived of overtime compensation. *See id. generally.* All but two of the plaintiffs also allege that they have been subject to DirecTV's policy of imposing "chargebacks" and its failure to reimburse them for necessary business expenses.[2]

Eight of the Plaintiffs bring their claims against only DirecTV. The remaining thirteen also bring claims against DirecTV and either DirectSat or Multiband as "similar, middle-management" members of the DirecTV Provider Network, alleging that the HSPs adopted scheduling requirements from DirecTV, provided supervision of their respective technicians, implemented DirecTV's hiring qualifications and criteria, monitored and enforced compliance with DirecTV's work performance requirements, maintained "contractor files" for each technician, which were regulated and audited by DirecTV, and operated warehouses and other facilities where technicians received DirecTV equipment and training. Dkt. 41 ¶¶ 37–41.

---

[2] Herman Kluesner and Ryan Yandell have pled only that they were unlawfully deprived of compensation for work done on tasks without a "piece rate" and that they were denied overtime compensation for work done in excess of 40 hours a week. Dkt. 41 at ¶¶ 153–58, 201–06.

The breakdown of Plaintiffs based on the claims each has brought against a particular defendant(s) is as follows:

| Defendants | DirecTV | DirecTV & DirectSat | DirecTV & Mutliband |
|---|---|---|---|
| Plaintiffs | Valdis Kremers<br>Herman Kluesner<br>Kevin Pittman<br>Kevin Pyle<br>Adam Schuller<br>William Woodcock<br>Ryan Yandell<br>David Yarlot | Brian Delgado<br>Justin Goodman<br>Dave Crawford<br>Shane Harris<br>Andrew Sinclair<br>Rick Weingart<br>John Lindsay<br>Robert Landrum | Tracey Hashman<br>Gary Missi<br>William Snyder<br>Anthony Hermiller<br>Christopher Long |

On April 20, 2015, each of the three Defendants filed a motion to dismiss the claims against it alleging, generally, (1) that Plaintiffs have failed to state a plausible claim for relief, (2) that no two Defendants are "joint employers" of any Plaintiff, and (3) that certain Plaintiffs' claims are time-barred in part or in whole. Dkts. 53, 54, 57. Defendants Multiband and DirectSat have also filed motions to sever arguing that because only some of the Plaintiffs name them as a "joint employer," this Cause of action should be divided into three separate parts. Dkts. 48, 51. We address Defendants' motions in turn below.

## I.    Defendants' Motions to Dismiss

Defendants have moved to dismiss Plaintiffs' First Amended Complaint on the grounds that: (1) Plaintiffs have failed to join a necessary party; (2) Plaintiffs have failed to sufficiently plead that any Defendant is a "joint employer"; (3) Plaintiffs have failed to set forth plausible claims for minimum wage and unpaid overtime violations of the

FLSA; (4) the take-home-pay that certain Plaintiffs allege to have received, when properly calculated, does not amount to an hourly wage less than the federal minimum wage; (5) certain Plaintiffs' claims are time-barred in whole or in part; (6) certain Plaintiffs' claims must be dismissed to prevent improper claim splitting; and (7) Plaintiffs claims must be dismissed to the extent they seek recovery under the FLSA for record keeping violations. See Dkts. 55, 58.

The Federal Rules of Civil Procedure authorize dismissal of claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In determining the sufficiency of a claim, the court presumes that all allegations in the complaint are true and draws reasonable inferences as required in the plaintiffs' favor. *Jacobs v. City of Chi.*, 215 F.3d 758, 765 (7th Cir. 2000). Federal Rule of Civil Procedure 8(a) applies, with several enumerated exceptions, to all civil claims, and it establishes a liberal pleading regime in which a plaintiff must provide only a "short and plain statement" of the claim showing that [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2); this reflects the modern policy judgment that claims should be "determined on their merits rather than through missteps in pleading*." E.E.O.C. v. Concentra Health Servs., Inc*., 496 F.3d 773, 779 (7th Cir. 2007) (citing 2 James W. Moore, et al., Moore's Federal Practice section 8.04 (3d ed. 2006)). A pleading satisfies the core requirement of fairness to the defendant so long as it provides "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

6

In its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court introduced a more stringent formulation of the pleading requirements under Rule 8. In addition to providing fair notice to a defendant the Court clarified that a complaint must "contain sufficient" factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility requires more than labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The plausibility of a complaint depends upon the context in which the allegations are situated, and turns on more than the pleadings' level of factual specificity; the same factually sparse pleading could be fantastic and unrealistic in one setting and entirely plausible in another. *See In re Pressure Sensitive Labelstock Antitrust Litig*., 566 F. Supp. 2d 363, 370 (M.D. Pa. 2008).

Although *Twombly* and *Iqbal* represent a new gloss on the standards governing sufficiency of pleadings, they do not overturn the fundamental principle of liberality embodied in Rule 8. As this Court has noted, "notice pleading is still all that is required, and 'a plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *United States v. City of Evansvill*e, 2011 WL 52467, at *1 (S.D. Ind. Jan. 8, 2011) (quoting

*Tamayo*, 526 F.3d at 1083). On a motion to dismiss, "the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. Of Psychiatry & Neurology, Inc*., 40 F.3d 247, 251 (7th Cir. 1994).

### A.  Failure to Join Skylink, Ltd. as a Necessary Party

During the time relevant to this litigation, ten of the twenty-one Plaintiffs were W-2 employees of Skylink, Ltd., a former Home Service Provider ("HSP") in the DirecTV Provider Network. These Plaintiffs now direct their claims toward DirectSat, who later acquired Skylink via an asset purchase agreement. DirectSat contends that the asset purchase agreement used to acquire Skylink expressly disclaimed any transfer of liabilities to DirectSat and that Pennsylvania law—which DirectSat maintains governs the agreement's provisions—gives absolute effect to such disclaimers. *See Tender Touch Rehad Servs., LLC v. Brighten at Bryn Mawr*, 26 F. Supp. 3d 376, 390 (E.D. Pa. 2014) ("Under Pennsylvania law, 'it is well-established that when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property.'"). DirectSat contends that these Plaintiffs must therefore seek recovery from Skylink and that their failure to join Skylink as a party to this action renders the court unable to "afford complete relief among the existing parties." Dkt. 55 quoting Fed. R. Civ. P. 19(1)(a).

Typically, when a company is sold through an asset sale rather than a stock sale, the purchaser acquires the company's assets but not necessarily its liabilities, depending

on the purchaser's liability as a successor. Most states, including Pennsylvania, limit such successor liability to sales in which the purchaser/successor expressly or implicitly assumes the seller's liabilities. *See Tender Touch*, 26 F. Supp. 3d at 390. In such cases, "[t]he Court may not find an implied agreement to assume the seller's liabilities where the contract provisions negating the liability is clear and unambiguous." *U.S. Automatic Sprinkler Co. v. Reliable Automatic Sprinkler Co.*, 719 F. Supp. 2d 1020, 1028 (S.D. Ind. 2010). These rules, however, are inapplicable to the case before us because it is not pursuant to state law that Plaintiffs seek to hold DirectSat liable. "[W]hen liability is based on a violation of a federal statute relating to labor or employment, a federal common law standard of successor liability is applied that is more favorable to plaintiffs than most state-law standards to which the court might otherwise look." *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 765 (7th Cir. 2013) (collecting cases). "In particular, a disclaimer of successor liability is not a defense." *Id.*

Under federal principles, courts consider: (1) whether the successor had notice of the charges; (2) whether the predecessor would have been able to provide the relief sought in the lawsuit before the sale or after the sale; (3) whether the successor can provide relief sought in the lawsuit; and (4) whether there is continuity between the operations and work force of the predecessor and the successor. *Id.* at 765–66. This test is meant to be construed flexibly and a finding of successor liability "is appropriate in suits to enforce federal labor and employment law—even when the successor disclaimed

liability when it acquired the assets in question—unless there are good reasons to withhold such liability." *Id.* at 766.

Here, Plaintiffs have alleged sufficient facts for successor liability to attach. Plaintiffs state in their First Amended Complaint that it is DirecTV's practice to orchestrate the absorption and acquisition of HSPs in its provider network "when litigation or other circumstances make the 'independent' relationship [with an HSP] a negative for DirecTV." Dkt. 41 at ¶ 53. To date, either DirecTV or one its three remaining HSPs have acquired at least thirteen prior HSPs. *Id* at ¶ 54. In late 2011 to 2012, Skylink was an HSP in DirecTV's provider network facing potential liability for wage and hour violations, *See Scruggs v. Skylink*, 2011 WL 6026152 (S.D. W. Va. Dec. 2, 2011); *Davis v. Skylink*, 2012 WL 2872884 (S.D. W. Va. July, 2012). In September 2012, DirectSat acquired Skylink via an asset purchase agreement, effectively leaving Skylink an empty husk unable to provide relief to potential plaintiffs. Dkt. 41 at ¶ 57. After DirectSat's acquisition, "working conditions for installation technicians who worked for Skylink, Ltd. remained substantially the same"; "technicians, including Plaintiffs, had substantially the same job(s)"; and "[t]here were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same." *Id.* at 58.

Given DirecTV's alleged practice of acquiring HSPs who are facing litigation and given the continuity of operations and workforce between DirectSat and Skylink, and also given the two companies' respective abilities to provide relief, there are no

compelling reasons to reject the "default rule" of successor liability in this case. *Teed*, 711 F.3d at 769. Defendants' motion to dismiss these Plaintiffs' claims is, therefore, **DENIED**.

### B. Failure to Plead that Any Defendant is a "Joint Employer"

Defendants next contend that those Plaintiffs who were treated as independent contractors rather than W-2 employees have failed to plead the existence of an employment relationship with any Defendant, and that all Plaintiffs have failed to plead that any two Defendants were "joint employers."

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d); it defines an "employee" as "any individual employed by the employer," *Id.* § 203(e)(1); and it defines the verb "employ" expansively to mean "suffer or permit to work," which includes those who work on a "piece rate basis." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947); 29 U.S.C. § 203(g).

To determine whether a worker comports with these definitions under the FLSA, we use the six-factor "economic reality" test, which considers: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending on his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the

11

extent to which the service rendered is an integral part of the alleged employer's business." *United States Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987); *see also U.S. v. Silk*, 331 U.S. 704, 716 (1947). In applying these factors to assess the "economic reality of the nature of the working relationship, [we] do not look to a particular isolated factor but to all the circumstances of the work activity." *Lauritzen*, 835 F.2d at 1534.

In addition, because Plaintiffs have brought FLSA claims against multiple Defendants as joint employers in this case, we also consider whether each of the separately alleged employers: "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records." *Moldenhauer v. Tazewell–Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) "Although these factors are certainly relevant in deciding whether an employer-employee relationship exists, it would be foolhardy to suggest that these are the *only* relevant factors, or even the most important." *Id.*

Considering the work activity described in this case, we hold that Plaintiffs have alleged facts sufficient to support a plausible claim that there was a reality of employment between them and Defendants as joint employers. Plaintiffs have alleged that DirecTV, through its Provider Agreements with the HSPs, dictated every aspect of how Plaintiffs' work was performed, including: the way in which they received work orders, the method by which they were compensated, the manner in which they were required to install the

satellite equipment, the DirecTV uniforms they were mandated to wear, and the DirecTV insignias they were required to display on their vehicles Dkt. 41 ¶¶ 45–52. Plaintiffs further allege that, as middle managers in DirecTV's employment scheme, the HSP Defendants implemented and enforced DirecTV's policies by providing supervision over their technicians, conducting quality assurance audits to determine whether a technician's work merited compensation, maintaining DirecTV audited "contractor files" for each of the technicians under their aegis, and possessing authority to effectively hire and fire technicians by entering into and terminating their contracts. *Id.* ¶¶ 38–40, 69–71.

Plaintiffs further allege that they were subject to "rollbacks" and "chargebacks" whereby Defendants would deduct amounts from their take-home pay for reasons both within (e.g., improper installation) and beyond  (e.g., faulty equipment) Plaintiffs' control. *Id.* ¶ 87. Thus, while some Plaintiffs may have, in some instances, been subjected to losses in pay due to skill or performance, the First Amended Complaint indicates that they suffered other losses which were wholly detached from the level of Plaintiffs' skill. Moreover, Plaintiffs have alleged that, unlike contractors who might be hired to complete a single task or even seasonal work, each of the technicians in this case had an ongoing relationship lasting from months to years with one or more Defendants. Dkt. 41 ¶¶ 99–224. And, as members of DirecTV's "nationwide corps of service technicians" who are responsible for both installing and repairing DirecTV's satellite television equipment, Plaintiffs would reasonably be considered an integral part of DirecTV's business. *See id. generally.*

We agree that all of these considerations point to a joint employer-employee relationship between Plaintiffs and Defendants. Others factors, however, are less helpful to our analysis. For instance, Plaintiffs have alleged that, as part of Defendants' failure to adequately compensate them, they were required to purchase the supplies necessary to perform installations such as screws, poles, concrete, cables, and gas, for which they were not reimbursed, yet the actual satellite television equipment that they installed was owned by DirecTV and kept at facilities operated by the HSPs. *Id.* ¶¶ 81, 44. Likewise, Plaintiffs allege that they were required to receive certification from the Satellite Broadcasting & Communications Association before being assigned DirecTV work order, but they also indicate that much of their training came from DirecTV-published training materials and from certain training programs they were required to attend at DirectSat and Multiband facilities. ¶¶ 41, 66.

Viewed as a whole, Plaintiffs' allegations contain sufficient facts to satisfy the common sense pleading standards of Rule 8. *See Iqbal*, 556 U.S. at 664. Accordingly, Defendants' motion to dismiss for failure to plead sufficient facts to support a joint employer theory under the FLSA is **DENIED**.

## C. Failure to Plead Plausible Minimum Wage and Unpaid Overtime Violations

Defendants contend that Plaintiffs failed to meet the Rule 8 pleading requirements for overtime and minimum wage claims under the FLSA because Plaintiffs have failed to identify at least one specific week in which they were paid less than minimum wage and/or worked uncompensated time over forty hours. Defendants also argue that, even as

14

alleged, certain Plaintiffs' compensation was sufficient under the FLSA because their average hourly wage was above the federal minimum wage.

### a.   Level of Specificity

The FLSA requires employers to pay their employees a minimum hourly wage and one and a half times their hourly wage for every hour worked in excess of forty hours per week. *See* 29 U.S.C. §§ 206(a), 207(a)(1). The elements of a claim for a denial of minimum wage are that: (1) the plaintiff was employed by the defendant; (2) the defendant was engaged in interstate commerce or the plaintiff is otherwise covered by the FLSA; and (3) in any given workweek the defendant did not pay the plaintiff wages at the appropriate federally mandated rate. 29 U.S.C. § 206(a). A claim for denial of overtime compensation, includes the additional elements that: (1) the plaintiff worked in excess of 40–hours in any given workweek, and (2) the defendant did not pay the plaintiff overtime wages. *Martinez v. Regency Janitorial Servs. Inc.*, 2011 WL 4374458, at *3 (E.D. Wis. Sept. 19, 2011) (citing *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1277, n. 68 (11th Cir. 2008)).

While it is well-established that Plaintiffs do not need to prove their case at this early stage of litigation, *see Iqbal,* 556 U.S. at 678, "[f]ederal courts have diverged somewhat on the question" of how much specificity is required in pleading claims under the FLSA. *Lundy v. Catholic Health Sys. of Long Island,* 711 F.3d 106, 114 (2d Cir. 2013). Because there is no consensus as to how much detail a plaintiff must plead under the FLSA, Defendants point to various cases that they contend support their argument

that Plaintiffs have failed to state an FLSA claim here. See Defs.' Br. at 17 citing, *Davis v. Abington Memorial, Hops.*, 765 F.3d 236, 243 (3rd Cir. 2014); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012); and *Landers v. Quality Commc'ns, Inc.,* 771 F.3d 638, 644 (9th Cir. 2014).

As Defendants' cases reveal, the First, Second, Third, and Ninth Circuits have interpreted *Iqbal* and *Twombly* to require a plaintiff bringing an FLSA claim to specify at least one workweek in which he worked in excess of forty hours and was not paid overtime wages as well as the average rate at which he was paid, the amount of unpaid compensation he is owed, "or any other facts that will permit the court to find plausibility." *Landers*, 771 F.3d at 645–46. Therefore, Defendants maintain that Plaintiffs' First Amended Complaint should be dismissed because "each individual Plaintiff wholly fails to identify **any single workweek**" in which he netted less than minimum wage or worked more than forty hours and did not receive overtime pay for those hours. See Defs.' Br. at 20 (bold and underline in original).

We do not believe that these requirements are consistent with the way courts in our Circuit have applied *Iqbal* and *Twombly.* The Seventh Circuit has held that while "[t]he degree of specificity required is not easily quantified," the plausibility standard requires only that "'the plaintiff…give enough details about the subject-matter of the case to present a story that holds together.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616-17 (7th Cir. 2011) (quoting *Swanson v. Citibank, NA,* 614 F.3d 400, 404 (7th Cir. 2010)).

16

"The required level of factual specificity rises with the complexity of the claim." *Id.* "A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson,* 614 F.3d at 405.

We agree with our sister courts in this circuit who have held that FLSA claims are "fairly straightforward" and "simple" and thus do not require as much to inform Defendants of the nature of Plaintiffs' claims as, say, cases involving financial derivatives or antitrust violations like those at issue in *Twombly* or intent-laden civil rights claims like those at issue in *Iqbal*. *See e.g., Martinez v. Regency Janitorial Servs., Inc.*, 2011 WL 4374458, at *8 (E.D. Wis. Sept. 19, 2011); *Montero v. JP Morgan Chase & Co.*, 2016 WL 193392, at *3 (N.D. Ill. Jan. 15, 2016). For this reason district courts within our Circuit have held that an FLSA plaintiff is not required to forecast evidence or make a case against the defendant, but need only provide enough details to give Defendants "sufficient notice to enable [them] to begin to investigate and prepare a defense" to a plausible claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) (reaffirming "the minimal pleading standard for simple claims"); *see also, e.g., Montero*, 2016 WL 193392, at *3 (N.D. Ill. Jan. 15, 2016); *Richardson v. Granite City Hotel & Resorts, L.L.C.*, 2015 WL 1944402, at *3 (S.D. Ill. Apr. 29, 2015); *Bitner v. Wyndham Vacation Resorts, Inc.*, 2013 WL 5878724, at *3 (W.D. Wis. Nov. 1, 2013); *Martinez*, 2011 WL 4374458, at *3 (E.D. Wis. Sept. 19, 2011).

Here, each Plaintiff has alleged that "in virtually every workweek" between certain dates (e.g., September 2009 and January 2014), he worked more than 40 hours per week as a technician for one or more Defendants and was unlawfully deprived of overtime compensation. Dkt. 41 at ¶¶ 99–224. Each Plaintiff has also alleged the approximate number of hours per week (e.g., 63 hours) he spent performing tasks for the benefit of Defendants and the number of hours (e.g., 23 of the 63 hours) he spent working for which he was not paid. *Id.* Where applicable, each Plaintiff has further alleged the amount by which his pay (e.g., $600 per week) was reduced as a result of "chargebacks" (e.g., $15 per week) and by Defendants' failure to reimburse him for necessary business expenses (e.g., $100 per week). *Id.* Defendants contend that because these are approximations of the length and frequency of Plaintiffs' unpaid work, Plaintiffs' First Amended Complaint fails to state a plausible claim to relief. We disagree. Plaintiffs' allegations clearly "give enough details about the subject-matter of the case to present a story that holds together.'" *Swanson v. Citibank, NA,* 614 F.3d 400, 404 (7th Cir. 2010). Indeed, even the cases cited by Defendants do not require the level of specificity that they request us to require. For instance, in *Davis* the Third Circuit stated that:

> In reaching this conclusion, we do not hold that a plaintiff must identify the exact dates and times that she worked overtime. For instance, a plaintiff's claim that she "typically" worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice.

*Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (citing *Manning v. Boston Medical Center Corp.*, 725 F.3d 34 (1st Cir. 2013) and *Lundy v. Catholic Health Sys. of Long Island,* 711 F.3d 106, 114 (2d Cir. 2013)).[3] Moreover, specific facts regarding wage calculations and pay deductions are usually contained within an employee's records and Defendants are therefore likely in a good—if not the best—position to gather the necessary documents to investigate and defend against these claims. *See, e.g., Richardson v. Granite City Hotel and Resorts, LLC*, 2015 WL 1944402, at *4 (S.D. Ill. April. 29, 2015). Otherwise, these details may be fleshed out during the discovery process. In any event, they are not required to be pled at this stage in the litigation. *See Iqbal,* 556 U.S. at 678. Accordingly, we **DENY** Defendants' motions to dismiss on these grounds.

### b.  Average Hourly Wage

Defendants next contend that, taken as true, the facts contained in Plaintiffs' First Amended Complaint fail to make out viable FLSA minimum wage claims against Defendants for Plaintiffs Missi, Snyder, Long, Goodman, Kremers, Harris, Pittman, Sinclair, Woodcock, Yarlot, and Lindsay. Defendants maintain that when these Plaintiffs' alleged wages are averaged across their alleged total time worked and reduced by the alleged chargebacks and unreimbursed expenses, each Plaintiff was in fact paid more

---

[3] The Ninth Circuit has also recently clarified its *Landers* decision, on which Defendants heavily rely, explaining that a plaintiff's complaint need not include an estimate of how much uncompensated time was worked, how often, or at what rate, so long as they "allege facts demonstrating that there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Boon v. Canon Business Sols., Inc.*, 592 Fed.Appx. 631, 632 (9th Cir 2015).

than the minimum wage. For example, Plaintiff Valdis Kremers estimates that, in a given workweek, he worked 50 hours for which he received an $1200 in pay, which, as he alleges, had already been reduced by $153 in "chargebacks" and was then reduced again by $150 in unreimbursed business expenses, bringing his actual weekly pay to an estimated $1050 ($1200 minus $150 in unreimbursed expenses). Dkt. 41 ¶ 121. Defendants argue that if Kremers were paid the minimum hourly wage of $7.25 for the first 40 hours of work and an overtime rate of $10.88 per hour (1.5 times the minimum hourly wage) for his remaining 10 hours of work, his weekly pay would equate to $398.80. See 29 U.S.C. § 206(a)(1)(C).Thus, Defendants contends, based on Kremers's own allegations, his actual weekly pay was, in fact, $651.20 *greater* than minimum wage.[4]

Plaintiffs do not dispute Defendants' calculations nor do they dispute that in order to state a claim under the FLSA's minimum wage provision they must allege facts to support the inference that their average weekly wage fell below the statutory minimum in at least one week. *See Nicholson v. UTi Worldwide, Inc.*, 2010 WL 551551, at *4 (S.D. Ill. Feb. 12, 2010) ("Generally, minimum wage laws [including the FLSA] have been construed to apply to the work week unit. That means that as long as an employee's total

---

[4] Based on a review of each Plaintiff's allegations in the First Amended Complaint, it appears that Plaintiffs Goodman, Missi, Snyder, Harris, Pittman, Sinclair, Weingart, Woodcock, Yarlot, and Lindsay similarly alleged wages that, when calculated, equated to greater than the federal minimum wage per week. Dkt. 41 ¶¶ 109, 127, 133, 145, 169, 187, 193, 199, 211, 217. Multiband has contended that Plaintiff Chris Long also alleged an effective pay rate above minimum wage; however, Multiband's calculation of Long's pay does not account for the overtime rate to which Long was entitled. Def.'s Br. at 15. Under the formula described above, Long has in fact alleged a rate less than the federal minimum wage. See Dkt. 41 ¶ 163. It also appears that Defendants did not move to dismiss the minimum wage claims of the other Plaintiffs on similar grounds because their alleged wages averaged below the minimum wage.

weekly wage is equal to or greater than his hours worked multiplied by the minimum

hourly rate, the employer has satisfied the minimum wage requirement."). Instead, they

argue that even if the average hourly wages alleged by certain Plaintiffs equated to an

amount above the minimum wage, these calculations of Plaintiffs' estimates do not

account for the variability of each workweek in the number of hours actually worked, the

total chargeback amounts, and the costs of unreimbursed business expenses. In other

words, Plaintiffs contend that they could have been paid more than the minimum wage

certain workweeks and less than the minimum wage in others, and, given that an

employer's obligation to assure minimum wage is evaluated on a workweek by

workweek basis, the estimates provided in the First Amended Complaint cannot be

interpreted to mean that Plaintiffs could *never* have been paid less than the minimum

wage in any given workweek during the periods of time specified by each Plaintiff. Pls.'

Resp. at 23 (citing *Alvarez v. IP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003) *aff'd* 546 U.S. 21

(2005)).

We are left unpersuaded by this analysis. Plaintiffs are the masters of their

complaint, and if they made less than an average of $7.25 (plus $10.88 for any overtime)

per hour in any given workweek, they were free to so allege. Instead, Plaintiffs Goodman,

Kremers, Missi, Snyder, Harris, Pittman, Sinclair, Weingart, Woodcock, Yarlot, and

Lindsay alleged that in a normal workweek they earned more than the minimum wage.

While it may be true that Plaintiffs could have earned more than the minimum wage "in a

given workweek" yet occasionally earned less in other weeks, the First Amended

21

Complaint contains allegations and facts which support only the former and not the latter. Plaintiffs' invite the Court to indulge their speculations that there were weeks when they earned less than the minimum wage. We cannot rely on such speculation. *See Nicholson*, 2010 WL 551551, at *4.

Likewise, we find Plaintiffs' argument that they need discovery to flesh out their minimum wage claims unpersuasive. This is not an instance where Defendants are in possession of superior knowledge that Plaintiffs can uncover only through discovery. Plaintiffs are presumed to know how much they worked and how much they earned. Indeed, they recalled enough of that information to have specifically alleged in good faith how much they worked and earned "in a given week." It just so happens that those amounts equated to a pay rate above the minimum wage. Plaintiffs' insistence that they should be entitled to discovery before their minimum wage claims are "ripe for disposition" effectively asks us to require Defendants to maintain a holding pattern on the chance that Plaintiffs might have earned less than the minimum wage in at least one week during the applicable time periods, although they have not alleged such in their complaint. "[I]f the plaintiffs lack evidentiary support for their claims, Fed. R. Civ. P. 11(b)(3)—then the plaintiffs should not have brought these claims in the first instance. Notice pleading 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Estate of Perry ex rel. Rodgers v. Wenzel*, 2013 WL 694966, at *1 (E.D. Wis. Feb. 26, 2013) (quoting *Iqbal*, 556 U.S. at 678–79).

22

If plaintiffs are able to identify specific weeks in which they earned less than the minimum wage, they are free to seek leave to amend the complaint, assuming they can meet the requirements for amendment. But the mere *possibility* that something may turn up in discovery is not a basis for maintaining these claims. We, therefore, **GRANT** Defendants' motions to dismiss on these grounds and **DISMISS without prejudice** the minimum wage claims of Plaintiffs Goodman, Kremers, Missi, Snyder, Harris, Pittman, Sinclair, Weingart, Woodcock, Yarlot, and Lindsay.

### D. Time-Barred Claims

Defendants next contend that certain Plaintiffs' individual FLSA claims must be dismissed in whole or in part because they are time-barred under the FLSA's two-year statute of limitations. Plaintiffs initially rejoin that they are not required to plead a lack of affirmative defenses, such as statute of limitations, in their complaint in order to survive a motion to dismiss. However, a defendant may raise the statute of limitations in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005). As the Seventh Circuit Court of Appeals has explained, a statute of limitations argument might more typically be raised in a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), but "the practical effect is the same." *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009). When "the relevant dates are set forth unambiguously in the complaint," it is appropriate to consider the statute of limitations at the motion to dismiss stage. *Id.*

23

In general, FLSA claims must be brought "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." See 29 U.S.C. § 255(a). Defendants contend that Plaintiffs' First Amended Complaint fails to sufficiently state a claim for a willful violation of the FLSA and, therefore, Plaintiffs are entitled to only a two-year limitations period.

In order to trigger the three-year look-back for willfulness, Plaintiffs must allege that Defendants "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Because Federal Rule of Civil Procedure 9(b) allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to be alleged generally, Plaintiffs' First Amended Complaint will survive a motion to dismiss so long as it gives Defendants "fair notice of what the ... claim is and the grounds upon which it rests." *Pisciotta v. Old Nat. Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007).

Here, Plaintiffs have alleged that DirecTV and its HSPs, including DirectSat and Multiband, developed a "fissured employment scheme" for the sole purpose of avoiding their obligations under the FLSA:

> By imposing its policies and practices—and to mask the economic realities of its employment relationship with Plaintiffs— DIRECTV willfully fails to maintain time records and other employment documentation, thereby saving payroll and other costs. And by imposing its policies and practices to avoid the reach of state and federal employment laws, DIRECTV willfully fails to pay minimum wage and overtime compensation to Plaintiffs.

24

* * *

Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

* * *

Defendants' unlawful conduct was willful because, among other reasons described herein, DIRECTV and other members of the Provider Network knew, or should have known, that the fissured employment scheme utilized a piece-rate system(s) that unlawfully denied Plaintiffs minimum wage, overtime wage, and other employment benefits. Those systems have been challenged in numerous lawsuits around the country in which DIRECTV, DirectSat, Multiband, as well as other HSP members of DIRECTV's Provider Network, have all been defendants. Indeed DIRECTV is currently a defendant in a lawsuit brought the U.S. Department of Labor in the United States District Court for the Western District of Washington challenging its (1) status as an employer of technicians like the plaintiffs herein and (2) the piece-rate compensation system. The system being challenged in that case is essentially identical to the system(s) being challenged in this case.

* * *

Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA...

Dkt. 41 ¶ ¶ 75, 233–35. These allegations are sufficient to state a claim for willfulness, thus satisfying the standards of Rule 9(b) and triggering the three-year look-back under the FLSA. *See e.g., Bockler v. R.J. McGough & Associates, Inc.*, 2009 WL 4693013, at *2 (S.D. Ind. Dec. 3, 2009) (finding that the plaintiff's amended complaint satisfied Rule 9(b) by alleging that "Defendant knowingly, willfully, or with reckless disregard, carried

out is illegal pattern or practice of failing to pay at least one and one-half times the regular rate of pay for all overtime hours with respect to Plaintiff…"); *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 589 F. Supp. 2d. 1026, 1036 (E.D. Wis. 2008) ("Plaintiffs' assertions that [defendant] 'did not act in good faith in failing to pay proper overtime pay, and had no reason to believe that its failure to do so was not a violation of the FLSA…' is sufficient [to satisfy Fed. R. Civ. P. 9(b)]"). If plaintiffs ultimately are unable to muster facts necessary to prove their allegations that Defendants willfully violated the FLSA, their recovery will be limited to a two-year limitations period. But, that is not the question before us, nor would it be appropriate to decide it at this stage of the litigation. Rather, we rule only that, as alleged, Plaintiffs have sufficiently incorporated a claim for Defendants' willful attempt to violate the FLSA.

Having determined that Plaintiffs stated a claim for a willful violation of the FLSA, we will not recite the lengthy history of each individual Plaintiff's alleged employment record or his prior litigation against DirecTV, DirectSat, and/or Multiband. Instead, we offer a general overview of the prior history of litigation between Plaintiffs and Defendants and rule only that each Plaintiff is entitled to a three-year look-back period from the date he joined this action, or the date of his filing of a consent in a prior action. Those Plaintiffs who filed a consent in a prior action are also entitled to periods of tolling based on previous court orders, but only so far as the court orders relate to a specific Plaintiffs' claims against a specific Defendant. Plaintiffs may not attempt to import the timeliness of their claims into other Plaintiffs' claim by those who diligently

26

pursued their own claims. Nor can they attempt to apply the tolling of their claims as to one Defendant against any other Defendant.

*Litigation History*

In February 2010, a group of technicians who had worked as subcontractors in the "DirecTV Provider Network" filed claims under the FLSA against DirecTV and certain HSPs (not including DirectSat or Multiband) in the Eastern District of Louisiana, *Lang v. DIRECTV, Inc., et al*, No.10-1085. Defendants in that action filed for summary judgment arguing that the contractors were not "employees" under the FLSA. The court denied the defendants' motion and thereafter conditionally certified the case as an FLSA collective action. *See Lang v. DirecTV, Inc.,* 801 F.Supp.2d 532 (E.D. La. 2011). Between July and September of 2012, six of the named plaintiffs in this action opted-in to the *Lang* case and asserted their own claims against DirecTV. On September 3, 2013, the *Lang* litigation was voluntarily decertified upon joint motion of the parties and the court dismissed all opt-in plaintiffs without prejudice and tolled the statute of limitations to permit them to refile their claims individually. Dkt. 56-2.

On November 1, 2013, those six "*Lang* opt-in plaintiffs" joined over 270 other named plaintiffs filing individual claims against DirecTV, DirectSat, Multiband and other HSPs in the United States District Court for the Central District of California, *Acfalle v. DirecTV, Inc., et al.*, No. 13-8108. On July 22, 2014, the California district court dismissed without prejudice all FLSA claims brought by non-California plaintiffs—including the claims of six of the plaintiffs now before us—and tolled the statute of

limitations for an additional 90 days in order for the dismissed plaintiffs to refile their FLSA claims in their home states or the states in which they worked. Dkt. 56-3.

The other fifteen plaintiffs in the action before us each filed consent forms between January and March 2013 joining as opt-in plaintiffs a conditionally certified FLSA collective action against DirecTV, which is currently pending before the United States District Court for the Eastern District of Missouri, *Arnold v. DirecTV, Inc., et al.*, No. 10-0352. On December 12, 2014, the Missouri district court entered an order dismissing without prejudice the FLSA claims of certain opt-in plaintiffs—including nine of the fifteen plaintiffs appearing both in the *Arnold* litigation and ours and tolled the statute of limitations for 150 days to allow them to refile their claims individually. Dkt. 56-4. Six of the named plaintiffs in the action before us remain opt-in plaintiffs in the *Arnold* case.

Plaintiffs commenced this action on October 20, 2014 against DirecTV, DirectSat, and Multiband. Plaintiffs John Lindsay and Robert Landrum were added as Plaintiffs on March 18, 2015.

28

The following chart showing a breakout of the Plaintiffs based on their participation prior or pending actions against some or all Defendants in this action clarifies this history:

| Prior Litigation | *Lang* opt-in Plaintiffs | *Acfalle* named Plaintiffs | *Arnold* opt-in Plaintiffs | |
|---|---|---|---|---|
| Plaintiffs | Brian Delgado<br>Justin Goodman<br>Tracey Hashman<br>Valdis Kremers<br>Gary Missi<br>William Snyder | Brian Delgado<br>Justin Goodman<br>Tracey Hashman<br>Valdis Kremers<br>Gary Missi<br>William Snyder | *DISMISSED*<br>Anthony Hermiller<br>Herman Kluesner<br>Christopher Long<br>Kevin Pittman<br>Kevin Pyle<br>Adam Schuller<br>Rick Weingart<br>William Woodcock<br>David Yarlot | *REMAINING*<br>Dave Crawford<br>Shane Harris<br>Andrew Sinclair<br>Ryan Yandell<br>John Lindsay<br>Robert Landrum |

Based on the foregoing, we **DENY** DirectSat's motion to dismiss the claims of Plaintiffs Crawford, Harris, Sinclair, Weingart, Lindsay, and Landrum as completely time-barred; they are not. We likewise **DENY** Multiband's motion to dismiss the claims of Plaintiffs Hermiller and Long as completely time-barred; they are not. We **GRANT** Defendants' motions in so far as any Plaintiffs seek recovery for any time period prior to the three-year look-back provision.

### E. Improper Claim Splitting

DirecTV also seeks dismissal of the claims of those Plaintiffs who remain opt-in Plaintiffs in the *Arnold* action in order to avoid "improper claims splitting." Dkt. 55 at 30

(citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

"It is well recognized that a federal district court has the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases." *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1212-13 (N.D. Ill. 1983)(citing *Colorado River,* 424 U.S. at 817). In appropriate instances, a district court may avoid wasteful, repetitive litigation by dismissing an action pending before it when it is duplicative of a parallel suit pending in another federal court. *Colorado River,* 424 U.S. at 817–818; *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.,* 600 F.2d 1228, 1233 (7th Cir.1979). As the Supreme Court noted in *Colorado River,* no precise test has evolved for determining when a suit is "duplicative" of another action. 424 U.S. at 817; *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) ("Wise judicial administration...does not counsel rigid mechanical solution of such problems."). Generally, however, a suit is duplicative of another suit if "the claims, parties, and available relief do not significantly differ between the two actions." *Ridge Gold*, 572 F. Supp. at 1213 (citing *Calvert Fire Ins. Co.*, 600 F.2d at 1233).

With regard to Plaintiffs Crawford, Harris, Sinclair, Yandell, Lindsay, and Landrum, despite some overlaps, this case is not sufficiently duplicative of the *Arnold* litigation to warrant dismissal. Although these Plaintiffs continue to pursue claims against DirecTV in the *Arnold* action, the relief sought in the case at bar arises from different

periods of time than those in *Arnold*. Specifically, each Plaintiff is pursuing relief for FLSA violations on or prior to September 13, 2012 in this action whereas the relief sought in *Arnold* is for violations occurring on or after September 14, 2012. See Dkt. 41 ¶¶ 135–36, 141–42, 183–84, 20–02, 213–14, 219–20. Given that an employee's right to recover minimum wage accrues each workweek under the FLSA, *see Alvarez v. IBP, Inc.*, 339 F.3d 894, 912 (9th Cir. 2003) *aff'd* 546 U.S. 21 (2005), Plaintiffs' pursuit in this action covers separate claims, for separate violations, against separate Defendants (DirectSat is not a party in the *Arnold* collective action), and therefore seeks separate relief. For these reasons, we decline DirecTV's request to dismiss these Plaintiffs' claims and hereby **DENY** its motion to dismiss.

### F. Record Keeping Violations

Plaintiffs First Amended Complaint accuses Defendants of willfully failing to maintain time records and other employment documentation as an aspect of their fissured employment scheme. Dkt. 41¶¶ 75, 233. Defendants move to dismiss the complaint "to the extent it seeks any recovery under the FLSA based upon recordkeeping violations." Dkt. 55 at 29 (citing *Elwell v. University Hosp. Home Care Servs*., 276 F.3d 832, 843 (6th Cir. 2002) ("Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor."); *Farmer v. DirectSat USA, LLC*, 2010 WL 3927640, at *12 (N.D. Ill. Oct. 4, 2010) (collecting cases)).

It is well-established that there is no private right of action for recordkeeping violations, *see id.,* and Plaintiffs have acceded to Defendants' motion on this ground.

Accordingly, to the extent that the First Amended Complaint purports to seek relief for any of Defendants' alleged recordkeeping violations, Defendants' motion to dismiss is **GRANTED**.

## II.    HSP Defendants' Motions to Sever

Both Multiband and DirectSat have requested a severance as to the claims against them in the instant case, effectively carving this litigation into three separate categories— one including claims against Multiband and DirecTV, another including claims against DirectSat and DirecTV, and the third including claims only against DirecTV. Dkts. 48, 51.

The HSP Defendants argue that joinder was improper in this case because Plaintiffs' individual claims do not rely on joint and/or several liability between the HSPs, do not arise from the same transaction or occurrence, and do not raise common questions of law or fact as to both HSP Defendants.

Rule 20(a) of the Federal Rules of Civil Procedure allows permissive joinder of claims "arising out of the same transaction, occurrence, or series of transactions or occurrences [when] ... any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a). Thus, for Defendants to have been properly been joined, Plaintiffs must have a right to relief against them arising out of the same transaction or occurrence, or series of transactions and occurrences, *and* there must be a common question of law or fact common to all of the parties. *See Rochlin v. Cincinnati Ins. Co.*, 2003 WL 21852341, at *12 (S.D. Ind. July 8, 2003).

32

DirectSat and Multiband contend, primarily, that their joinder was improper because they are independently organized companies with no contractual relationship among them, therefore their actions cannot be considered to have arisen out of the same transaction or occurrence. As they point out, "alleging all employers in an industry have a common behavior is not an adequate basis for joining them together in a suit based on such behavior." *Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153, 1160 (E.D. Cal. 2008). On the other hand, "[a]'transaction' can encompass a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Rochlin,* 2003 WL 21852341, at *13. Thus, courts within this circuit and others have held that allegations of "company-wide policies" and "systems of decision-making" can constitute a single transaction or series of transactions for Rule 20(a) purposes. *See e.g. Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 230 (N.D. Ill. 2002); *Rochlin*, 2003 WL 21852341, at *13; *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir. 1974).

Here, Plaintiffs' allegations fall somewhere between an industry-wide practice and a company-wide policy. It is undisputed that the HSPs in DirecTV's Provider Network are separately organized and operated entities; however, Plaintiffs contend that due to the identical Provider Agreements utilized by the HSP Defendants all Defendants were members of a single "fissured employment scheme" meant to enforce a DirecTV's practices and procedures and shield them from "employer" status under the FLSA. "Courts have adopted a flexible, case-by-case approach to determine whether a particular

factual situation constitutes a single transaction or series of transactions for purposes of Rule 20(a)." *Spearman*, 2000 WL 33125463, at *6. The ultimate question is whether the claims are "logically related." *Id*. Multiband and DirectSat nonetheless maintain that *Wynn v. Nat'l Broad. Corp.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) is "particularly instructive" in aiding our analysis of the facts in this case. We agree with Defendants that *Wynn* is informative, but we nonetheless reach a different result. In *Wynn*, fifty former and current television writers brought age discrimination claims against fifty-one separate entities in the television industry, alleging that each defendant had "contributed to [an] industry-wide discrimination practice," and that each defendant's conduct was therefore "a substantial factor in causing indivisible injury to each plaintiff." *Id.* at 1075. Ultimately, "[t]he court granted the motion to sever as there was no uniform policy maker responsible for the acts at the root of the complaint." *Doe v. D.M. Camp & Sons*, 624 F.Supp.2d 1153, 1160 (E.D. Cal. 2008) (discussing *Wynn*, 234 F. Supp. 2d. 1067). The *Wynn* Court further stated that it would not have found misjoinder if Plaintiffs could "identify a collective or controlling entity (either formal or informal) from which" the illegal policy originated. *Wynn*, 234 F. Supp. 2d at 1079 (citing *United States v. Mississippi*, 380 U.S. 128 (1965), which held that six county registrars were properly joined when it was alleged that the registrars acted pursuant to a state-wide system designed to discriminate).

Here, the HSPs' contractual nexus with DirecTV provides the relationship tie which was absent in *Wynn*. Plaintiffs' allegations focus on DirecTV's top-down

34

enforcement of policies, practices, and procedures through its Provider Network and on to its technicians. Taken as true, these allegations establish a single, DirecTV-originated system of employment comprising the same series of transactions and occurrences, regardless of the specific intermediaries enforcing the identical provisions. Accordingly, we find that Plaintiffs have satisfied the first prong of Rule 20(a)(2).

Defendants also contend that joinder was improper here because Plaintiffs' claims do not raise common questions of law or fact as to both HSP Defendants, thereby failing to satisfy the second prong of Rule 20(a)(2).[5] However, as explained above, each Plaintiff contends that, based on the mandatory and identical policies implemented DirecTV, Multiband, and/or DirectSat, they were "employees" of one or more the defendants and that the identical policies and procedures adopted and implemented by Defendants unlawfully deprived them of appropriate pay under the FLSA. *See* Dkt. 41. We therefore agree with the Plaintiffs that "each claim asserted by each Plaintiff presents at least two

---

[5] In support of this argument, both Multiband and DirectSat stress, with some regularity, that Plaintiffs have all been involved in prior litigations against one or more of the defendants in which their claims were dismissed **without** prejudice and in which they were prohibited from joining, pursuing, or initiating any further collective action against Defendants. The HSPs contend that allowing Rule 20 joinder in this case would be contrary to the intent of the decertification and dismissal orders in these prior actions. We disagree. We have discussed this history of litigation in detail previously in this order, but for emphasis summarize it again here. Those plaintiffs who were involved in the *Lang* action were dismissed only after they stipulated to a voluntary decertification, and when they joined over 270 others in filing individual claims in *Acfalle*, the Central District of California held that they had not violated the voluntary decertification in *Lang* and denied the motions to sever Defendants. The court then dismissed **without** prejudice all non-California plaintiffs and ordered them to refile in their home states in order to alleviate the undue burden of litigating the claims of approximately 300 plaintiffs in a single district. Likewise, the Defendants reliance on the decertification in *Arnold* and the ruling by the Judicial Panel for Multidistrict Litigation is misplaced; neither of those decisions included a Rule 20 joinder analysis or made findings of fact or law on which we must rely here. Thus, while the referenced court orders describe the cases as "individual" claims requiring "individual injury," those terms were not used in addressing the merits of the joinder question before this Court.

fundamental legal issues common to every Defendant: (1) whether, by application of their Mandatory Policies, DirecTV and/or one or more of its co-Defendants 'employed' Plaintiffs as that term is defined by the FLSA, 29 U.S.C. § 201 *et seq.*; and (2) whether Defendants' piece-rate compensation scheme deprives Plaintiffs of compensation due under the FLSA." Dkt. 63 at 7.

Because Plaintiffs have alleged that the HSPs entered into identical Provider Agreements, and thereby enforced the same "piece-rate" system of pay as to each of them, the questions of law are common and applicable to all Defendants; the second prong of Rule 20(a)(2) is thus also satisfied. Accordingly, we find that the parties were properly joined in this action.

Assuming joinder is deemed permissible, Defendants also request that we exercise our discretion under Rule 20(b) and Rule 21 to sever the case to protect them from "embarrassment, delay, expense, or other prejudice." Fed. R. Civ. P. 20(b). District courts have broad discretion to sever parties if there is a threat that joinder would confuse and complicate the litigation rather than making it more efficient and manageable. *See Hebel v. Ebersole*, 543 F.2d 14, 17 (7th Cir. 1976). We do not perceive that such a threat exists here.

Defendants argue that severance will prevent juror confusion, promote judicial economy, and avoid disclosure of the individual HSPs' proprietary secrets. On whole, we are unpersuaded by these concerns. Due to the identical nature of the Provider Agreements entered into by both HSP Defendants, DirecTV was able to control their

36

operations and workforce through identical mechanisms, policies, and procedures. As a result, the questions of law raised by each plaintiff are identical as to the HSP Defendants, and any facts unique to individual plaintiffs or defendants are largely confined to the calculation of damages. If severed, Plaintiffs would be forced to litigate essentially the same case three times, conducting three times as much discovery as necessary and incurring three times the expenses. DirecTV likewise would be forced to respond the same legal issues in three separate actions. We believe discovery can be conducted to reflect the commonality among the issues so as to reduce the required investments of time and resources otherwise expended in response to individual claims. The HSPs may, as appropriate, seek to file their documents under seal to safeguard against any legitimate concerns they may have in disclosing proprietary secrets. For these reasons, we **DENY** Defendants motions to sever.

## Conclusion

As detailed above, Defendants' motions to sever [Docket Nos. 48, 51] are **DENIED**. Defendants' motions to dismiss [Docket Nos. 53, 54, 57] are **GRANTED in part** and **DENIED in part** and the minimum wage claims of Plaintiffs Goodman, Kremers, Missi, Snyder, Harris, Pittman, Sinclair, Weingart, Woodcock, Yarlot, and Lindsay are hereby **DISMISSED without prejudice**.

Since time for filing motions for leave to amend the pleadings has expired under the parties' Case Management Plan, See Dkt. 89 ¶ D, Plaintiffs filed a "Conditional Motion to Seek Leave to Amend Should Court Grant Defendants' Motions to Dismiss,"

requesting thirty days to file a motion for leave to amend their complaint to address any deficiencies identified by the Court. [Docket No. 68]. Having now ruled on the motions to dismiss, we hereby **GRANT** Plaintiffs' motion to time to seek leave to amend. Plaintiffs are allowed thirty days from the date of this Order in which to seek leave to amend their complaint.

IT IS SO ORDERED.

Date: 3/16/2016

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

38

Distribution:

Christina J. Fletcher
DUANE MORRIS LLP
cjfletcher@duanemorris.com

Richard Patrick Darke
DUANE MORRIS LLP
rpdarke@duanemorris.com

Michael  Tiliakos
DUANE MORRIS, LLP
mtiliakos@duanemorris.com

Natalie F. Hrubos
DUANE MORRIS, LLP
nfhrubos@duanemorris.com

Alexa  Santora
FOX ROTHSCHILD LLP
asantora@foxrothschild.com

Colin D. Dougherty
FOX ROTHSCHILD LLP
cdougherty@foxrothschild.com

Bradford B. Lear
LEAR WERTS LLP
lear@learwerts.com

Todd C. Werts
LEAR WERTS LLP
werts@learwerts.com

George  Hanson
STUEVE SEIGEL HANSON LLP
hanson@stuevesiegel.com

Ryan D. O'Dell
STUEVE SEIGEL HANSON
odell@stuevesiegel.com